UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

TUFAMERICA, INC.,                                    :

                          Plaintiff,                 :        11 Civ. 1434 (ALC)(DCF)

             -against-                               :        **OPINION AND ORDER**

CODIGO MUSIC LLC, CODIGO PUBLISHING   :
LLC, CODIGO ENTERTAINMENT, LLC, THE
CLYDE OTIS MUSIC GROUP and MORTON      :
CRAFT

                                                     :
                          Defendants.
                                                     :
-----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5-7-13
```

**ANDREW L. CARTER, United States District Judge:**

On October 18, 2011, Morton Craft, then 91 years old, was deposed as a non-party

witness in an ongoing copyright dispute between Plaintiff TufAmerica and Defendants Codigo

Music LLC, Codigo Publishing LLC, Codigo Entertainment, LLC (together, "Codigo Parties")

and Clyde Otis Music Group ("Clyde Otis").  Less than six weeks later, Craft was not only

involved—he was named a defendant in TufAmerica's amended complaint.  At his deposition,

Craft was represented by Kelly Talcott, who was and remains counsel for TufAmerica.  Craft

now seeks to disqualify Talcott as counsel for Plaintiff TufAmerica on the ground that Talcott's

continued involvement is an irreconcilable conflict of interest against a former client. The

Codigo Parties and Clyde Otis filed separate motions in support of Craft's motion to disqualify.

For the reasons stated herein, Craft's disqualification motion is granted.

BACKGROUND

This suit arises out of the ownership of Hippy Skippy Moon Strut ("Hippy Skippy"), a

musical composition sampled in the hit song, "Ain't No Other Man" by Christina Aguilera,

1

released in 2006 by Sony Music Entertainment.[1]  TufAmerica alleges it acquired rights to "I'll

Be a Happy Man," "Happy Soul," "Happy Soul (With a Hook)" (together, the "Happy Soul

Recordings") by virtue of an agreement, entered with Morton Craft in October 2004, for

exclusive administrative rights over the Speed Records and other catalogs ostensibly owned by

Craft ("2004 Agreement").  A letter dated October 27, 2004 clarified that the licenses were

exclusive and in perpetuity (Am. Compl. ¶ 36).  TufAmerica further alleges that the Happy Soul

Recordings were later copied and released as "Hippy Skippy." TufAmerica sued the Codigo

Parties and Clyde Otis alleging that they improperly copied "Hippy Skippy" and made it

available through its website without receiving a license from TufAmerica or otherwise

compensating TufAmerica.

On September 27, 2011, the Codigo Parties subpoenaed Craft to testify at a deposition

and produce documents related to ownership of Speed Records and/or the disputed recordings.

The deposition took place on October 18, 2011.  Counsel for Codigo Parties, Steven Kaplan,

took the deposition and counsel for TufAmerica, Kelly Talcott, purported to represent Craft

(Craft Dep. Tr. 14:9-19).  To prepare for the deposition, Talcott and Brian Levenson,

TufAmerica's in-house attorney, met with Craft on two occasions before the deposition date.

Talcott also made multiple phone calls to Craft "related solely to scheduling." (Talcott Decl.,

Ex. 1).  Talcott contends that no confidential or privileged information was shared during these

meetings.  (Id.)

In defending the deposition, Talcott objected occasionally and followed along in

documents as they were reviewed.  Toward the end of the deposition, Craft repudiated the

---

[1] Sony was terminated as a Defendant in this action when the amended complaint was filed.

validity of the 2004 Agreement to the extent it granted rights to TufAmerica beyond limited

licensing.  (Craft Dep. Tr. 163-167).  On November 30, 2011, TufAmerica moved to amend its

complaint (Dkt. No. 30) and on December 7, 2011 filed an amended complaint (Dkt. No. 36),

naming Craft as a defendant, seeking declaratory judgments that the 2004 Agreement and related

letter agreement are valid (Counts 9-10) and seeking specific performance and injunction against

him (Counts 11) (Am. Compl. p. 14).

     As a defendant, Craft retained Peter Salzler as counsel.  Salzler entered his appearance

before the Court on March 13, 2012 (Dkt. No. 42).  Prior to seeking disqualification, Salzler

emailed Talcott on March 30, 2012, about the nature of Talcott's representation of Craft at the

deposition.  Talcott replied on April 23, 2012 (Talcott Decl., Ex. 1).  On June 1, 2012, Salzler

requested an adjournment of a status conference without raising the disqualification issue

(Talcott Decl. ¶ 4).  Salzler participated in status conferences on June 20 and August 14 before

Magistrate Judge Freeman but did not raise the disqualification issue (Talcott Decl. ¶ 3).  Talcott

also points to ongoing communications among counsel about rescheduling Craft's continued

deposition[2] in which Salzler never raised the disqualification issue. (Talcott Decl. ¶ 6; id. Ex. 4).

Craft finally requested a pre-motion conference to file a disqualification motion on September 5,

2012 and filed his motion on October 4, 2012 (Dkt. No. 55).  The Codigo Parties and Clyde Otis

filed a motion in support of Talcott's disqualification in short order (Dkt. No. 59).

DISCUSSION

A.  Legal Standard

---

[2] Craft's continued deposition was scheduled for August 29, 2012, but did not occur because
Craft fell and injured himself.  In the wake of this disqualification motion, the deposition has not
been taken or otherwise rescheduled.

Disqualification motions are committed to the discretion of the district court. Cheng v. GAF Corp., 631 F.2d 1052, 1055 (2d Cir. 1980), vacated on other grounds and remanded, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981)); Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983) (if factors are met, "an attorney *may* be disqualified from representing a client") (emphasis added). The issue then becomes whether, in the exercise of discretion, an attorney *should* be disqualified. Blue Planet Software, Inc. v. Games Intern., LLC, 331 F. Supp. 2d 273, 276-277 (S.D.N.Y. 2004) (citing Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994)).

"The standard for disqualification varies depending on whether the representation is concurrent or successive." Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005). Craft's motion falls into the second category, that of safeguarding client confidences in a successive representation.[3] Where successive representation is alleged, disqualification is warranted where: (1) the moving party is a former client of the adverse party's

---

[3] Although Talcott arguably engaged in concurrent representation, because the interests of Craft became directly adverse to those of TufAmerica during the deposition, this conclusion is a bit misleading.

Concurrent representation is "prima facie improper" unless the attorney is "prepared to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation." Hempstead Video, 409 F.3d at 133 (citing Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1387 (2d Cir. 1976)). However, the standard for concurrent representation is "less clear" when the conflict arises in the context of the simultaneous representation of a party and a non-party witness. See All Star Carts and Vehicles, Inc. v. BFI Canada Income Fund, No. Civ. 08-1816, 2010 WL 2243351, at *4 (E.D.N.Y. June 1, 2010). The Second Circuit has not established a per se rule in such a case because the conflict is usually only speculative at that point. See id.; Ritchie v. Gano, No. 07 Civ. 7269, 2008 WL 4178152, at *10 (S.D.N.Y. Sept. 8, 2008). Indeed, at the time of the representation—when representation would have been "concurrent"—Craft was a non-party witness and any awareness of adverse interests would have been speculative. The issue before the Court is whether Talcott's representation during Craft's deposition is prejudicial to Craft *as a defendant.*

Furthermore, there is no suggestion that Talcott went into the deposition intending to represent clients with adverse interests. Craft's deposition transcript does not reveal that Talcott was less vigorous in defending Craft's deposition even when Craft's and TufAmerica's interests became adverse. Therefore, a finding of concurrent representation is unwarranted.

4

counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior

representation of the moving party and the issues in the present lawsuit; and (3) the attorney

whose disqualification is sought had access to, or was likely to have had access to, relevant

privileged information in the course of his prior representation of the client. Skantek Medical v.

Sabella, 693 F. Supp. 2d 235, 239 (S.D.N.Y. 2008) (quoting Evans v. Artek Sys. Corp., 715 F.2d

788, 791 (2d Cir.1983). Where the second element is satisfied, there is an irrebuttable

presumption that the third element is also satisfied. Id. (citations omitted).

Courts in this Circuit show "considerable reluctance to disqualify attorneys" because

"disqualification has an immediate adverse effect on the client by separating him from counsel of

his choice" and because "disqualification motions are often interposed for tactical reasons [a]nd

even when made in the best of faith. . . inevitably cause delay." Board of Ed. of City of New

York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979) ("Unless an attorney's conduct tends to

"taint the underlying trial," courts should be quite hesitant to disqualify an attorney."');

Government of India v. Cook Industries, Inc., 569 F.2d 737, 739-740 (2d Cir. 1978); Blue Planet

Software, Inc. v. Games Intern., LLC, 331 F.Supp.2d 273, 278 n. 2 (S.D.N.Y. 2004).

"Only two readily identifiable situations raise the specter that the litigation will be tainted

if one side's counsel is permitted to remain in the case: when the challenged attorney is

concurrently representing adverse interests so that his vigor in pursuing the interests of one of

them is questionable, or when the attorney's successive representation of adverse interests raises

the possibility that in the present matter he will improperly use confidences gained in the prior

representation to the detriment of his former client." U.S. Football League v. National Football

League, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (citing Fund of Funds, Ltd. v. Arthur

Andersen & Co., 567 F.2d 225 (2d Cir. 1977); Cheng, 631 F.2d 1052); Nyquist, 590 F.2d at

5

1246. Thus, "the court must balance three competing interests: the plaintiff's interest in freely

selecting counsel of his choice, the defendant's interest in having a trial free from risk of

disclosure of confidential information and the public's interest in the scrupulous administration

of justice." Nichols v. Village Voice, Inc., 99 Misc.2d 822, 825, 417 N.Y.S.2d 415 (N.Y. Sup.

Ct. 1979) (citing Hull v. Celanese Corp., 513 F.2d 568, 572 (2d Cir. 1975); Sea Trade Maritime

Corp. v. Coutsodontis, No. 09 Civ. 488, 2011 WL 3251500, at *6 (S.D.N.Y. July 25, 2011).

    Since courts deciding a motion for disqualification should take a "restrained approach

that focuses primarily on preserving the integrity of the trial process," U.S. Football League, 605

F. Supp. at 1452 (quoting Armstrong v. McAlpin, 625 F.2d 433, 444 (2d Cir.1980), vacated on

other grounds and remanded, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981), "[m]ere

appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification

motion." id. Despite the high standard of proof required, see Evans, 715 F.2d at 791-92, and

restraint urged before imposing such a "drastic measure," Capponi v. Murphy,772 F. Supp. 2d

457, 471 (S.D.N.Y. 2009); Scantek, 693 F. Supp. 2d at 238-39 (collecting cases), when faced

with questions of disqualification, "any doubt is to be resolved in favor of disqualification." Hull

v Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975); Northwestern Nat. Ins. Co. v. Insco, Ltd.,

No. 11 Civ. 1124(SAS), 2011 WL 4552997 (S.D.N.Y. Oct. 3, 2011).  A district court must

consider the factual record underlying such a motion in detail to determine whether the party

seeking disqualification has sustained the high standard of proof necessary to disqualify

opposing counsel.  Papyrus Tech., 325 F. Supp. at 276 (citations omitted).

    Although not binding authority, courts in this Circuit have considered the New York

Disciplinary Rules and ABA Model Rules of Professional Responsibility for guidance on a

motion for disqualification. Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp.

2d 381, 388 (S.D.N.Y. 2010); Papyrus Tech. Corp. v. New York Stock Exchange, Inc., 325 F.

Supp. 2d 270, 276 (S.D.N.Y. 2004) (collecting cases).  On April 1, 2009, New York adopted the

New York Rules of Professional Conduct, which maintain much of the same language and

substance in a different format. With this background in mind, I now turn to each of the

disqualification factors.

    B.  Application

       1.  Former Client

    The first disqualification factor is whether the moving party is a former client of the

adverse party's counsel.  Skantek, 693 F. Supp. 2d at 239.  TufAmerica does not seriously

contend that Talcott did not act as Craft's attorney during the deposition.  At several points

during the deposition, Craft indicated Talcott as his lawyer. (See Craft Tr. 14:9-15:10; 178:5-

179:19).  Talcott even objected to the form of certain questions (Craft Tr. 43, 136) and assisted

Craft at breaks and requested breaks in the deposition to accommodate Craft (Talcott Decl., Ex.

1).

    Craft brought this motion to disqualify because "it became clear that Mr. Craft believed

that Mr. Talcott and/or TufAmerica was representing his interests at the time of the deposition."

(Dkt. No. 53).  This belief is substantiated by Craft's deposition transcript.  The fact that, at the

time he was deposed, Craft was a non-party witness whose interests were ostensibly not at issue,

does not render this conclusion unreasonable, given his age and general unfamiliarity with the

deposition process.  Thus, an attorney-client relationship was established for the purposes of a

disqualification motion.

       2.  Substantial Relationship Between the Litigations

7

The second disqualification factor is whether there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit. Skantek, 693 F. Supp. 2d at 239. Deciding substantial relationship "requires a determination with respect to whether the facts which were necessary to the first representation are necessary to the present litigation." Blue Planet, 331 F. Supp. 2d at 277 (quoting Regal Marketing, Inc. v. Sonny & Son Produce Corp., No. 01 Civ. 1911, 2002 WL 1788026, at *7 (S.D.N.Y. Aug. 1, 2002)); U.S. Football League, 605 F. Supp. at 1459 ("If the facts giving rise to an issue which is material in both the former and the present litigations are as a practical matter the same, then there is a "substantial relationship" between the representations for purposes of a disqualification motion.").

As much as Plaintiff tries to distinguish this case as not substantially related to the copyright dispute with the Codigo Parties and Clyde Otis, the significance of Craft's deposition testimony is readily apparent. Common sense dictates that the Codigo Parties would not have sought Craft's testimony as a third-party witness were it not relevant to TufAmerica's suit about copyright infringement. Craft's alleged assignment of the Speed Recordings in a 2004 agreement is central to TufAmerica's claims against the Codigo Parties and Clyde Otis. Indeed, TufAmerica admitted the centrality of Craft's testimony in its motion to amend its complaint. See Dkt. No. 33 (stating that amendment would not be futile "given the central role that Mr. Craft plays in this case [as] the party with whom TufAmerica contracted to secure the rights that are at issue"). It cannot now claim otherwise. Thus, this factor favors disqualification.

3.  Access to Confidences

The third factor for disqualification is whether the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the

8

course of his prior representation. <u>Skantek</u>, 693 F. Supp. 2d at 639. Where the second element is satisfied, there is an irrebuttable presumption that the third element is also satisfied. <u>Id.</u>; <u>Government of India v. Cook Industries, Inc.</u>, 422 F. Supp. 1057, 1059-60 (S.D.N.Y. 1976), <u>aff'd</u>, 569 F.2d 737 (2d Cir. 1978) ("The law is clear that if the former action and the present action are "substantially related" and the attorney's involvement in the former case was more than peripheral, then there is an irrebuttable presumption that the attorney had access to confidential information.") (footnote omitted). For instance, Disciplinary Rule 5–108(A), substantially similar to Rule 1.9 of the New York Rules of Professional Conduct[4], is "premised on the irrebuttable presumption that a lawyer who formerly represented a client will have obtained secrets and confidences of the client." <u>Papyrus Tech.</u>, 325 F. Supp. 2d at 277 (citing N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 723 (1999) [Ethics Op. 723]).

Talcott points to Craft's inability to cite specific confidential as if it were somehow dispositive of the motion. As Talcott notes, Craft does not proffer any specific disclosures during the preparatory sessions but, where the other factors for disqualification are undisputed, requiring such a showing would undermine the stated goal of confidentiality. <u>Id.</u> ("Such an inquiry would be improper; it would put the movant to the choice of either revealing its confidences in order to prevail on the motion or else refraining from moving to disqualify."); <u>Government of India</u>, 422 F. Supp. at 1060; <u>T. C. Theatre Corp. v. Warner Bros. Pictures</u>, 113 F. Supp. 265, 269 (S.D.N.Y. 1953) ("To compel the client to show, in addition to establishing that the subject of the present adverse representation is related to the former, the actual confidential

---

[4] A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing. N.Y. Rules of Prof. Conduct Rule 1.9.

9

matters previously entrusted to the attorney . . . would tear aside the protective cloak drawn about the lawyer-client relationship. . . [and] require the disclosure of the very matters intended to be protected by the rule.").

Here, Craft indicates in his motion to disqualify and during the deposition that he believed Talcott was representing him and his interests.  Under these circumstances, there is a strong possibility that confidences were shared.  Whether or not confidences were shared or either party recalls the confidences, the Court cannot risk the chance of Talcott's unconscious impressions might be influenced by Craft's confidential information.  Government of India, 422 F. Supp. at 1060 ("The rationale for this irrebuttable presumption is that to allow the litigants, attorneys and Court to become embroiled in a controversy over whether confidences have been reposed and whether the attorney is consciously or subconsciously making use of such confidences would thwart . . . [the] ultimate objective of promoting an attorney-client relationship of trust and candor through preservation of clients' and former clients' confidences.") (citations omitted).  Thus, the third factor of access to confidences is also met.

4.  Discretionary Factors

Craft has established all three factors for disqualification.  Thus, the issue now is whether Talcott *should* be disqualified.  Blue Planet, 331 F. Supp. 2d at 276-77.

Talcott contends that the delay in bringing the motion should somehow weigh against Craft's motion.  Talcott points out that the issue first arose on March 30, 2012 when Salzler emailed Talcott about the extent of his representation, but did not inform the court of a desire to disqualify Talcott until September 5, 2012 or file his motion to disqualify until October 4.

To be sure, "attorneys are expected to bring what they genuinely believe are serious issues of disqualification arising during litigation to the tribunal's attention promptly for

10

adjudication." George v. City of Buffalo, 789 F. Supp. 2d 417, 431 (W.D.N.Y. 2011) (citing inter alia, Siverio v. Lavergne, 86 CIV. 6584 (KMW), 1989 WL 31531, at *2 (S.D.N.Y. Mar. 29, 1989) ("A motion to disqualify [counsel] should be made within a reasonable time of discovering a possible conflict of interest, or a waiver will be presumed.")).  Given the unique circumstances of this case, the Court is not prepared to conclude that Craft's motion was a tactical move aimed only at causing delay.  See George, 789 F. Supp. 2d at 431 (court "decline[d] to engage in such second-guessing of Plaintiff's tactical decisions" for waiting 90 days before filing disqualification motion, precipitated in part by moving party's unsuccessful attempt to persuade conflicted attorney to voluntarily withdraw); Silverio, 1989 WL 31531, at *3 (seven months not an unreasonable delay in moving to disqualify plaintiff's counsel).

First, Craft did not retain his own counsel in this matter until March 13, 2012 when Peter Salzler entered an appearance on his behalf (Dkt. No. 42).  Salzler promptly contacted Talcott about the nature of the representation on March 30 and Talcott did not respond until April 23. The other failures to mention it at conferences before the court were not per se tactical.  Indeed, Salzler requested an adjournment of one status conference because of a scheduling conflict with a trial for another case.  When he finally brought the motion, Salzler attributed the delay to his realization while preparing Craft for his continued deposition that Craft believed Talcott was representing his interests, not those of TufAmerica. This understanding may have given rise to a situation where confidences might have been shared.  See supra.  Furthermore, the length of delay was not unreasonably long; in total, less than six months passed between Salzler's initial awareness of a conflict and the request for a pre-motion conference to file a motion to disqualify. Whether Craft's counsel should have deduced this fact earlier is not an inquiry the Court will make especially given the strange posture of this case in which witness became defendant solely

11

due to his deposition testimony. The present motion was brought within a reasonable time after learning of the facts supporting the alleged conflict of interest and thus Craft did not waive his right to seek disqualification.

Talcott's last-ditch argument that TufAmerica's interests are not really adverse to Craft because TufAmerica only seeks to "restore the equilibrium that existed before [Craft's] deposition, which will inure ultimately to Mr. Craft's benefit." (Opp. at 7) is unpersuasive and without legal basis. Suing someone is the definition of adverse. TufAmerica cites no law and this Court is aware of none that support the argument that seeking equitable relief is somehow less adverse than seeking damages. Indeed, specific performance is generally considered "extraordinary" relief. See, e.g., Lucente v. International Business Machines Corp., 310 F.3d 243, 262 (2d Cir. 2002). The sought remedies only reflect the how a plaintiff in a given case believes the dispute is best resolved. TufAmerica has no basis for damages against Craft for copyright infringement so equitable relief seeking enforcement of the 2004 Agreement is its only remedy. Even so, from Craft's perspective, an injunction may well be more adverse than a finite damages award where, as here, the alleged agreement grants TufAmerica an exclusive license in perpetuity to over 80 sound recordings.

Whether Craft will achieve some residual benefit if TufAmerica is successful is not the primary issue. At least until Craft's repudiation of the scope of the 2004 Agreement is resolved, TufAmerica's interests are adverse to Craft's.

Considering the additional factors, the Court finds that disqualification is required here. Given the extreme nature of the disqualification sanction, the Court regrettably finds that disqualification is total and Talcott cannot represent TufAmerica even in its dispute against Codigo and Otis. Were it at all feasible to bifurcate the claims in the complaint, the Court would

12

opt to do so.  Here, however, the claims are inextricably tied.  The resolution of the claims against the Codigo Parties and Clyde Otis require a determination of the validity of 2004 Agreement so any effort to detach the claims against Craft from the overarching suit against Codigo Parties and Otis would be futile.

CONCLUSION

Craft's Motion to Disqualify Plaintiff's Counsel is GRANTED.  Codigo and Clyde Otis's Motion to Disqualify Plaintiff's Counsel is GRANTED.  Thus, Talcott is disqualified from continuing as counsel for Plaintiff TufAmerica.  TufAmerica has 21 days from the date of this order to retain new counsel.

SO ORDERED.


Dated:        May 7, 2013
              New York, New York


_____
United States District Judge

13