UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TUFAMERICA, INC.,

                Plaintiff,

- against -

CODIGO MUSIC LLC, CODIGO PUBLISHING LLC, CODIGO ENTERTAINMENT, LLC, THE CLYDE OTIS MUSIC GROUP, and MORTON CRAFT,

                Defendants.

**OPINION AND ORDER**

11 Civ. 1434 (ER)

Ramos, D.J.:

Plaintiff TufAmerica, Inc. brought this action against Codigo Music LLC, Codigo Publishing LLC, and Codigo Entertainment, LLC (together, "Codigo"), The Clyde Otis Music Group ("Clyde Otis"), and Morton Craft (together, "Defendants"), alleging copyright and trademark infringement of a group of musical compositions, sound recordings, and a trademark created in the late 1960s. Before the Court are (1) the parties' submissions regarding the Court's final order of judgment, (2) Plaintiff's counsel's motion to withdraw as counsel, (3) Defendants' motion for sanctions, and (4) Clyde Otis' motion for attorneys' fees.

For the reasons stated below, Codigo's request for a declaration of ownership of the songs listed in Exhibit A and the Peek A Boo and Slew Music trademarks is DENIED, counsel's motion to withdraw is GRANTED and Defendants' motions for sanctions and Clyde Otis' attorney's fees are DENIED.

## I. Factual and Procedural Background[1]

Plaintiff commenced this action on March 2, 2011 alleging ten causes of action including, copyright and trademark infringement, unfair competition, and unjust enrichment. (Doc. 1). To the Complaint, Plaintiff attached schedules containing the names of numerous compositions and sound recordings over which it claimed ownership. *Id.* On December 7, 2011, with the Court's permission, Plaintiff filed an Amended Complaint adding Morton Craft as a defendant and attaching a list of compositions and sound recordings allegedly subject to two agreements entered into in 2004 between Plaintiff and Craft (the "2004 Agreements"). (Doc. 36, Ex. A). Specifically, Plaintiff alleged that through the 2004 Agreements, it acquired the rights to the "Speed Recordings," defined as the songs listed in Exhibit A and the Speed Marks, defined as the Speed, Peek A Boo, and Slew Music record labels. Amended Complaint ¶ 13.

On April 2, 2012, Codigo filed an answer to the Amended Complaint denying Plaintiff's allegations and asserting numerous counterclaims, including a declaration that it is the sole and exclusive owner of the rights in and to all of the "Musical Works" at issue in this case, and "the Speed Marks." Answer to Amended Complaint (Doc. 46) ¶ 51. Codigo defined "Musical Works" as the "sound recordings and musical compositions of Happy Man, Happy Soul, Happy Soul w/a Hook and Hippy Skippy"[2] and the "Speed Marks" as "the 'Speed' record label." *Id.* at ¶¶ 9, 39.

---

[1] The February 16 Opinion and Order contains a detailed recitation of the facts underlying the Amended Complaint, (Doc. 159). Familiarity with the same is therefore assumed and only those facts necessary to resolve the instant motions will be discussed.

[2] This matter principally involves one original musical composition, another composition and four sound recordings all based on the original composition: (1) Happy Man Composition, (2) Happy Man Sound Recording, (3) Happy Soul Sound Recording, (4) Happy Soul with a Hook Sound Recording, (5) Hippy Skippy Moon Strut (Opus #1)

On June 10, 2016, after several years of pretrial discovery and motion practice, this Court held a status conference in which it set a trial date for November 14, 2016 and directed the parties to file a joint pretrial order and other pretrial submissions by October 14, 2016. On October 7, 2016, Defendants requested an extension to submit proposed jury instruction, voir dire, verdict form, and the motions *in limine*—but not its joint pretrial statement—which the Court granted (Doc. 166). The Court ordered the parties to submit the pretrial motions by October 21, 2016. Counsel for Defendants timely filed a pretrial statement on October 14, 2016 and advised the Court that despite the fact that they had circulated to Plaintiff's counsel, Mr. Scott Zarin, a draft of the pretrial statement they had prepared, he failed to comment or otherwise respond to the draft. (Doc. 167). On October 17, 2016, counsel for Defendants filed a pre-motion letter seeking to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 41(b) due to Plaintiff's failure to participate in the preparation of the pretrial statement. (Doc. 168). Later that day, without having filed a pretrial statement, Zarin requested an adjournment of the pretrial motion and trial dates due to an illness and his observance of the religious holidays. (Doc. 169). Counsel for Defendants promptly objected to Zarin's request. (Docs. 170, 171). In order to address the various requests, the Court scheduled a conference for October 21, 2016.

At the October 21 conference, the Court, among other things, denied Zarin's request for an adjournment of the trial date, denied Defendants' motion for sanctions against Zarin, and over the strenuous objection of Defendants, granted Zarin a one-week extension to file Plaintiff's pretrial submissions to October 28, 2016. Nevertheless, on October 27, 2016, Zarin submitted a

---

Composition ("Hippy Skipp"), (6) Hippy Skippy Moon Strut (Opus #1) Sound Recording (together, "Happy Man Works").

letter requesting leave to file a motion to dismiss for lack of subject matter jurisdiction and again requesting an adjournment of the trial date. (Doc. 179). The following day, via letter endorsement, the Court granted Zarin's request for leave to file the motion, indicating that he may file its motion at any time, but denied his request to adjourn the trial date and all pretrial due dates. (Doc. 180).

In contravention of this Court's October 21, 2016 order, Zarin failed to file any pretrial submissions by October 28, 2016. Consequently, on November 2, 2016, the Court issued an Order to Show Cause as to why the Amended Complaint should not be dismissed with prejudice for lack of prosecution and directed the parties to appear on November 4, 2016. (Doc. 181). At the Show Cause hearing, Zarin announced to the Court that the parties had settled in principle—though Defendants vehemently disagreed—and that his caseload had prevented him from filing any notices or pretrial submissions with the Court. When asked by the Court if Plaintiff was prepared to put on a case at the trial scheduled for November 14, 2016, Zarin responded that he was not prepared for, nor did he believe that the case would proceed to, trial. The Court warned Zarin that the case would be dismissed due to his failure to prosecute and granted the parties leave to brief the issue of subject matter jurisdiction. Plaintiff filed its motion to dismiss for lack of subject matter jurisdiction later that evening.

On November 9, 2016, Defendants filed an opposition to Plaintiff's motion to dismiss for lack of subject matter jurisdiction and cross-moved to dismiss the Amended Complaint with prejudice, once again, for failure to prosecute. (Doc. 189). At a conference on November 10, 2016, the Court found that it had subject matter jurisdiction over the case and dismissed the Amended Complaint with prejudice. The Court also struck Plaintiff's Answer to Defendants' Counterclaims and accordingly, entered default judgment on the Counterclaims. The Court

4

directed the parties to submit a proposed joint order detailing the agreed upon terms. On December 9, 2016, Codigo filed a proposed order, but indicated that Plaintiff did not consent to the terms. (Doc. 206). That same day, the Court held a status conference to discuss the terms of the proposed order. At the conference, Plaintiff informed the Court that it was withdrawing all but two of its objections: Plaintiff maintained its objections to a declaration that Codigo is the owner of (1) all of the songs listed in Exhibit A and (2) the Speed, Peek A Boo, and Slew trademarks (the "Three Trademarks").

On December 21, 2016, the Court entered an interim judgment memorializing the terms to which the parties agreed, mainly that Codigo is the sole owner of the Happy Man Works. The Court directed the parties to submit additional briefing to address whether Codigo is entitled to a declaration of ownership of all of the songs in Exhibit A and the Three Trademarks. The Court also granted Defendants leave to file motions seeking sanctions against Plaintiff and Zarin. Additionally, Zarin was granted leave to file a motion to withdraw as counsel. Approximately two weeks later, Defendants each filed the instant motions for sanctions. (*See* Docs. 212, 215, 221). Clyde Otis also filed a motion for attorneys' fees pursuant to Section 505 of the Copyright Act. (Doc. 225).

On January 20, 2017, Zarin filed a letter motion for leave to withdraw on the basis of nonpayment, irreconcilable differences, and conflict of interest. (Doc. 230). The Court found that counsel had not provided sufficient support for his stated bases for the motion to withdraw and denied the motion without prejudice. (Doc. 233). The Court also granted Plaintiff leave to refile the motion. On February 12, 2017, Zarin filed the instant motion to withdraw. (Doc. 241).

5

## II. Discussion

### A. Entry of Final Order and Judgment

Codigo claims that it is entitled to a declaration in the final order that it is the owner of the songs listed in Exhibit A and the Three Trademarks because, as alleged in its Counterclaims, Codigo obtained those rights pursuant to the 2009 agreement with Emusica Records, LLC. Codigo's Memorandum of Law in Support of Proposed Final Order and Judgment ("Codigo Judgment Memo") (Doc. 219) at 8–9. In response, Plaintiff argues that Codigo is not entitled to such an expansive declaration because it was not sought in the Counterclaims, and even if Codigo had requested such a declaration, the allegations do not support such a finding. Plaintiff's Memorandum of Law in Opposition to Defendants' Proposed Final Order and Judgment ("Pl. Judgment Opp.") (Doc. 237) at 4.

"[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability, [but] it is not considered an admission of damages." *Pompey v. 23 Morgan II, LLC*, No. 16 Civ. 2065 (ARR)(PK), 2017 WL 1102772, at *4 (E.D.N.Y. Feb. 13, 2017) (quoting *Greyhound Exhibitgroup*, 973 F.2d 155, 158 (2d Cir. 1992)). "[E]ntry of a default judgment converts the [defaulting party's] admission of liability into a final judgment that terminates the litigation and awards the [non-defaulting party] any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).

Rule 54(c) provides that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Second Circuit has explained that the theory behind this rule

is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

*Silge v. Merz*, 510 F.3d 157, 159 (2d Cir. 2007) (quoting 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure,* § 2663 (1998)). Thus, "[n]otice of the damages sought must 'come *before* the decision to default and be evident from the face of the complaint.'" *Pauta v. Aena Mech. Corp.*, No. 11 Civ. 6374 (WHP), 2014 WL 3855025, at *1 (S.D.N.Y. July 25, 2014) (quoting *Silge*, 510 F.3d at 161). "[N]otice that comes at the inquest stage is not sufficient in itself to satisfy the notice requirement of Rule 54(c) and to permit a [a party] in a default action to recover for damages not claimed in the complaint." *Grand Fia Inc. v. Hakakin*, No. 11 Civ. 2578 (PGG) (KNF), 2012 WL 3578175, at *8 (S.D.N.Y. Aug. 13, 2012) (citing *Silge*, 510 F.3d at 161) (adopted, Order dated Dec. 28, 2012).

The Court finds that the counterclaims do not explicitly demand a declaration of ownership for all of the works listed in Exhibit A and the Three Trademarks. First, by its own terms, Codigo's demand for relief requests a declaration of ownership only with respect to the Happy Man Works and the Speed trademark. In its counterclaims, Codigo alleges that in 2009, SE Music Acquisition LLC purchased the assets of Emusica, which included the administrative rights in the Happy Man Composition, the Happy Man Sound Recording, and the Speed Marks. Answer to Plaintiff's Amended Complaint, Affirmative Defenses, Counterclaim, and Cross-Claim (Doc. 46) at 12. Thereafter, SE Music Acquisition LLC changed its name to Codigo Music and assigned to Codigo Publishing LLC "the publishing rights to all of the musical compositions purchased from Emusica . . . including without limitation the musical works at

7

issue in this case." *Id.* Because of this agreement, Codigo claims that it "is the present and sole owner of all rights, title, interests, and claims in the copyrights to the Happy Man Composition, the Happy Man Sound Recording, as well as all right, title and ownership of the Speed Marks." *Id.* As part of its declaratory relief, Codigo sought an order from the Court specifically declaring that Codigo defendants "are the sole and exclusive owners of the rights in and to all of the Musical Works at issue in this case (subject to the terms of the DNJ Settlement Agreement)" and that "Codigo, by assignment from Emusica, is the sole owner of the rights in and to the Speed Marks." *Id.* at 18. "Musical Works" are specifically defined as the "sound recordings and musical compositions of Happy Man, Happy Soul, Happy Soul w/a Hook, and Hippy Skippy," *Id.* at 16. "Speed Marks" is defined as the "'Speed' record label." *Id.* at 11. Notably, in its original Counterclaims, Codigo did not provide such definitions, and instead relied on the terms used by Plaintiff, which included all of the songs listed in Exhibit A and the Three Trademarks.*³* Thus, by including its own definitions for the terms in the Amended Counterclaims, Codigo narrowed the scope of its counterclaims to exclude the additional songs and trademarks.⁴

---

³ Codigo's first set of counterclaims in response to the Complaint, do not include defined terms, but rather refer to the songs generally as the "musical works at issue in this case" and the trademark as the "Speed" mark. (Doc. 16).

The Amended Complaint—filed after the counterclaims—refers to the musical works at issue in this case as the "Speed Recordings," defined as the compositions and sound recordings listed in Exhibit A (which include the Happy Man Works). Amended Complaint ¶ 17. It also refers to the trademarks at issue as "Speed Marks," defined as Speed, Peek A Boo, and Slew Music. Amended Complaint ¶ 16.

⁴ Codigo's decision to narrow the scope of the action is also evident in its letters addressing discovery disputes early on in the litigation. In a letter dated January 14, 2014, Codigo explained to the Court its reasons for opposing Plaintiff's discovery request of a list of all of the sound recordings and musical compositions Codigo owned. (Doc. 89). In addition to finding the request vague and overbroad, Codigo remarked that the request "include[d] many thousands of tracks nearly all of which have nothing to do with this case *involving approximately 5 tracks*." *Id.* (emphasis added). On April 24, 2014, Magistrate Judge Debra Freeman ordered Codigo to, among other things, produce a version of the 2009 Agreement and a current asset list, that included "any of the musical compositions and sound recordings at issue in this case, including 'Happy Soul,' 'Happy Soul With a Hook,' 'Hippy Skippy Moon Strut,' and 'I'll Be a Happy Man." (Doc. 102). No explicit reference to the songs listed in Exhibit A was made.

Second, Codigo's argument that the phrase "and the other intellectual property at issue in this case" incorporates the remaining songs and trademarks is unavailing. The counterclaims make only a passing reference to the additional songs and trademarks and do not allege ownership over these works. *See* Counterclaims at 16–17 ("TufAmerica claims to have acquired some or all of the rights in some or all of the Musical Works from Craft 'o/b/o himself, Speed Records, Peek A Boo and Slew Music' in connection with the alleged acquisition of at least eighty three copyrights in exchange for only $2,500 . . . ."). Moreover, Codigo does not include this catchall phrase in its prayer for relief. Codigo specifically seeks a declaration of ownership with respect to the "Musical Works" and "Speed Marks" as defined in the counterclaims.

Although neither party provided the Court with direct precedent for their respective positions, the Court finds that this ruling is consistent with Second Circuit precedent interpreting Rule 54(c) relief strictly. *See Silge*, 510 F.3d at 160 (denying plaintiff award of pre-judgment interest because plaintiff had not included request in the "demand for judgment"). By failing to draft its Counterclaims to include a declaration of ownership of all songs in Exhibit A and the Three Trademarks, Codigo "ran the risk that [its] damages would be limited in the event of default." *Id.*

Even assuming that Codigo had sought a declaration of ownership of the additional songs and trademarks, the allegations in the counterclaims—accepted as true—do not provide a basis for such a finding. In the counterclaims, Codigo alleges that it acquired the rights to "all of the musical compositions purchased from Emusica . . . including without limitation the musical works at issue in this case" pursuant to a 2009 agreement. Counterclaims (Doc. 46) at 12. Specifically, the 2009 agreement granted Codigo, "those recordings set forth on Schedule 1.1(a) . . . and all other recordings owned or made by Sellers or to which Sellers have rights" and "those

musical compositions set forth on Schedule 1.1(b) . . . and all other musical compositions (or portions thereof) owned or made by or licensed to Sellers." Declaration of Steven Kaplan ("Kaplan Decl.") (Doc. 218), Ex. L (CODIGO 000196–198). Relevant here, Schedule 1.1(a) includes thirty-four of the recordings listed in Exhibit A (or four out of the ten albums on the list), and Schedule 1.1(i) lists "Speed" as one of the trademarks acquired by SE Music Acquisition. Ex. L. The additional songs and two trademarks, Peek A Boo and Slew Music, are not listed on the schedule.

Thus, although the 2009 Agreement may support the contention that Codigo is the owner of a number of the songs listed in Exhibit A, it does not support the argument that Codigo is the owner of *all* of the songs. Nor does it support a finding that Codigo is the owner of the Peek A Boo and Slew Music trademarks. Codigo acknowledges that the 2009 Agreement does not explicitly list the additional songs and trademarks, but claims that the agreement itself "conveyed the entire Speed catalog, *including without limitation*" the listed songs. Codigo's Reply Memorandum of Law in Further Support of Proposed Final Order and Judgment ("Codigo Judgement Reply") (Doc. 248) at at 5 fn. 2 (emphasis in original). However, this is insufficient to support or provide adequate notice that Codigo would be seeking a declaration of ownership with respect to all of the songs listed in Exhibit A and the additional two trademarks. *See generally*, *Am. Jewish Comm. v. Berman*, No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *9 (S.D.N.Y. June 15, 2016), *report and recommendation adopted*, No. 15 Civ. 5983 (LAK), 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016) (denying request for commission fees as part of default judgment because plaintiff had notice of fees, but complaint made no reference to commission fees and commission fees were not explicitly included in demand).

Accordingly, Codigo is entitled to a declaration that it is the owner of the Happy Man Works and the Speed trademark, but is not entitled to a declaration of ownership as to the additional songs in Exhibit A and the Peek A Boo and Slew Music trademarks. The parties are, thus, directed to propose a Final Judgment and Order, reflecting this finding.

### B. Withdraw as Counsel

Local Civil Rule 1.4 of the United States District Courts for the Southern and Eastern Districts of New York governs withdrawal of counsel and provides,

> [a]n attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar[.]

Local Rule 1.4. "[I]t is well-settled that a court has considerable discretion in deciding a motion for withdrawal of counsel." *Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, No. 10 Civ. 2333 (MEA), 2014 WL 1087934, at *1 (S.D.N.Y. Mar. 19, 2014). When considering whether to grant a motion to be relieved as counsel, "district courts analyze two factors: the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding." *Blue Angel Films, Ltd. v. First Look Studios, Inc.,* No. 08 Civ. 6469, 2011 WL 672245, at *1 (S.D.N.Y. Feb. 17, 2011). "Satisfactory reasons include failure to pay legal fees, a client's lack of cooperation-including lack of communication with counsel, and the existence of an irreconcilable conflict between attorney and client." *Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950 (DAB), 2005 WL 1963945, at *1 (S.D.N.Y. Aug. 15, 2005) (internal quotation marks omitted).

Plaintiff's counsel, Zarin, asserts two reasons to justify his withdrawal. First, Zarin reiterates that Plaintiff has failed to pay for his services. He asserts that he unsuccessfully attempted to obtain payment from Plaintiff on numerous occasions and that he warned Plaintiff that continued nonpayment would result in his filing for withdrawal. Zarin further claims that on January 16, 2017, he received a voicemail from Aaron Fuchs, TufAmerica's CEO, indicating that that he did not intend on paying the full amount due. To his letter motion, counsel attached a declaration from Nicholas Schmitt, TufAmerica's Director of Business & Legal Affairs, in which he claimed that Plaintiff owed Zarin $32,000, and that Fuchs did not intend on paying counsel's bills for this matter. Zarin also filed under seal the series of emails with Plaintiff's representatives regarding his fees. To date, Plaintiff purportedly owes counsel approximately $47,500.

Second, Zarin claims that Plaintiff is unsatisfied with counsel's representation in the matter. Schmitt's declaration states that Fuchs "no longer wishes to have any communication" with counsel and consents to his withdrawal. Though Zarin acknowledges that he still represents Plaintiff in the *TufAmerica v. Diamond*, No. 12 Civ. 0349 (AJN) matter ("*Diamond* matter"), he claims that Plaintiff expressed satisfaction with counsel's representation in the matter and that he was paid in full for those services. He further claims that no additional work is needed in that case and that he does not anticipate representing Plaintiff in any subsequent appeals.

Lastly, Zarin argues that Defendants would not be prejudiced by his withdrawal because he has already filed a response to Defendants' proposed final order and judgment. (Docs. 253, 254) Zarin also claimed that he would file—and eventually did file—a response to Defendants' pending motion for sanctions against him.

In response, Defendants argue that counsel's reasons for withdrawal are insufficiently supported and that withdrawal would greatly prejudice Defendants. Defendants claim that Plaintiff provides no support for the amount purportedly owed and that it is unclear whether Plaintiff will, in fact, not make any payments. Defendants highlight that Zarin did not attach invoices showing the total amount owed and that the communication with Schmitt indicated that some payment would be made. In support, Defendants rely on *S.E.C. v. Gibraltar Glob. Sec., Inc.*, No. 13 Civ. 2575 (GBD)(JCF), 2015 WL 2258173, at *1 (S.D.N.Y. May 8, 2015) in which the court held that nonpayment alone did not justify withdrawal because counsel had not specified how much its clients' owed in fees, submitted affidavits accounting for clients' current assets, or provided any evidence of clients' future inability to pay.

Defendants also argue that if irreconcilable differences truly did exist between Plaintiff and Zarin, that Zarin would have applied for withdrawal in the *Diamond* matter as well. They claim that the *Diamond* case is not over because further proceedings might be required after the court considers Plaintiff's application for relief from an award of attorneys' fees. Defendants further argue that withdrawal would significantly delay the remaining proceedings. They claim that Plaintiff would encounter difficulty in retaining new counsel to address the motions for sanctions and attorneys' fees, which will place Defendants and the Court in an "untenable position."

The Court finds that Zarin's proffered reasons justify withdrawal. First, Zarin's claim that Plaintiff has refused to pay for his legal services is sufficient. Schmitt's affidavit and the email communications provided by Zarin show that Plaintiff has continuously and deliberately refused to make payments. *See Team Obsolete Ltd. v. A.H.R.M.A. Ltd.,* 464 F.Supp.2d 164, 166

(E.D.N.Y. 2006) ("Courts have long recognized that a client's continued refusal to pay legal fees constitutes a 'satisfactory reason' for withdrawal under Local Rule 1.4.").

Moreover, even if nonpayment alone did not justify withdrawal here, Zarin's claim of irreconcilable differences and Plaintiff's consent to his withdrawal are sufficient. In fact, the court in *Gibraltar*—the case on which Defendants rely—arrives at that same conclusion. In *Gibraltar*, counsel provided two reasons for withdrawal: (1) that its clients could not afford to pay the fees and (2) that the clients had discharged counsel. *See Gibraltar*, 2015 WL 2258173, at *2. The court found that counsel had not sufficiently shown that its clients could not pay their legal fees because they did not provide any documentation showing the amount owed or the client's present or future financial state. Thus, nonpayment *alone* did not justify withdrawal. *Id.* However, the court ultimately granted counsel's motion to withdraw because its second reason for withdrawal—that the client had discharged counsel—was sufficient. *Id.* Here, Plaintiff, through its general counsel, has stated that it no longer wishes to have any communication with Zarin and has ceased responding to any of his communication attempts.

Accordingly, counsel's motion to withdraw is GRANTED. Plaintiff is directed to find alternative counsel by **September 5, 2017.**

C. Sanctions

Defendants seek sanctions pursuant to Federal Rule of Civil Procedure 11 and 16 for Plaintiff's and Zarin's alleged bad faith conduct in failing to file any pretrial materials, filing a frivolous motion to dismiss for lack of subject matter jurisdiction, and "luring" Defendants into negotiating and drafting a settlement agreement which Plaintiff "never intended to execute." Codigo's Memorandum of Law in Support of its Motion for Sanctions Against TufAmerica and its Counsel ("Codigo Sanctions Memo") (Doc. 214) at 10.

Zarin argues that the imposition of additional sanctions by the Court would be improper because its dismissal with prejudice of the Amended Complaint was a sufficient penalty. Plaintiff's Counsel's Memorandum of Law in Opposition to Defendant's Motion for Sanctions ("Zarin Sanctions Memo") (Doc. 253) at 10. Additionally, Zarin claims that he did not act in bad faith in engaging in settlement discussions and that Plaintiff's motion to dismiss rested on a colorable basis. *Id.* at 13.

Rule 11 states that the court may impose sanctions "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated . . . ." Fed. R. Civ. P. 11(c)(1); *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (stating that "sanctions under Rule 11 are discretionary, not mandatory"). The Second Circuit has made clear that Rule 11 sanctions should be granted with caution, applied only when "a particular allegation is utterly lacking in support." *In re Highgate Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (S.D.N.Y. 1996)); *Kiobel v. Milson*, 592 F.3d 78, 81 (2d Cir. 2010); (*see also Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003) ("When reviewing Rule 11 sanctions, however, we nevertheless need to ensure that any [sanctions] decision is made with restraint.") (internal quotation marks and citation omitted)).

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law." *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 477-78 (S.D.N.Y. 2013) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal citations and quotations omitted)). When deciding

15

whether to grant Rule 11 sanctions the Court applies an objective standard of reasonableness, *W.K. Webster & Co. v. Am. President Lines, Ltd.*, 32 F.3d 665, 670 (2d Cir. 1994), and looks to, among other factors, whether the party acted in bad faith; whether they relied on a direct falsehood; and whether the claim was "utterly lacking in support." *New V & J Produce Corp. v. NYCCaterers Inc.*, No. 13 Civ. 4861 (ER), 2014 WL 5026157, at *7 (S.D.N.Y. Sept. 29, 2014).

Pursuant to Rule 16, the Court can order sanctions if an attorney "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). Specifically, it provides that the court "must order the [violating] party, its attorney, or both to pay reasonable expenses— including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award unjust." Fed. R. Civ. P. 16(f)(2). "In deciding whether a sanction is merited, the court need not find that a party acted in bad faith. The fact that a pretrial order was violated is sufficient to allow some sanction." *Estate of Shaw v. Marcus*, No. 14 Civ. 3849 (NSR) (JCM), 2017 WL 825317, at *4 (S.D.N.Y. Mar. 1, 2017) (citing Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, 6A Federal Practice and Procedure § 1531 (3d ed. 2010)). The imposition of sanctions pursuant to Rule 16 is also within the sound discretion of the court. *See Neufeld v. Neufeld*, 172 F.R.D. 115, 118 (S.D.N.Y. 1997); *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 366-367 (E.D.N.Y. 2013).

The Court finds that additional monetary sanctions are not appropriate here. First, the Court has already dismissed the Amended Complaint with prejudice. As Plaintiff noted, this consequence is sufficiently severe to remedy any prejudice resulting from Plaintiff's and counsel's conduct. *See e.g.*, *Dungan v. Donahue*, No. 12 Civ. 5139 (ILG) (RLM), 2014 WL 2941240, at *7 (E.D.N.Y. June 30, 2014) ("Insofar as defendant seeks unspecified sanctions

16

beyond the 'harsh remedy' of dismissal, this Court considers any additional sanctions against plaintiff unnecessary."); *Shasgus v. Janssen, L.P.*, No. 08 Civ. 180A (RJA), 2009 WL 2878542, at *6 (W.D.N.Y. Sept. 2, 2009) (finding that dismissal with prejudice "alone is sufficient and should not include also paying attorneys' fees"). "While the Court is sensitive to the cost that [Plaintiff] has imposed on [Defendants], the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses." *Lipin v. Hunt*, 573 F. Supp. 2d 836, 846 (S.D.N.Y. 2008). In addition to dismissing the Amended Complaint with prejudice, the Court also struck Plaintiff's Answer to Codigo's Counterclaims and entered default judgment in Codigo's favor.

Second, the record indicates that Zarin's attempts to settle the matter were made in good faith. The emails he provided in support of his argument show that a settlement was actually contemplated by Plaintiff and that Zarin was led to believe that it would be consummated. That the settlement agreement was not ultimately executed, does not necessarily warrant an imposition of sanctions. Lastly, Plaintiff's filing of a motion to dismiss its own action for lack of subject matter jurisdiction on the eve of trial was indeed strategic. Nevertheless, the Court finds that the dismissal of the Amended Complaint with prejudice and the striking of Plaintiff's Answer to Defendants' Counterclaims, resulting in an entry of default judmgent against Plaintiff, were sufficient sanctions.

### D. Attorneys' Fees & Costs

Separately, Clyde Otis asserts that it is entitled to an award of its costs and attorneys' fees pursuant to Section 505 of the Copyright Act. The Clyde Otis Music Group, Inc.'s Memorandum of Law in Support of its Motion for Attorney's Fees and Costs ("Clyde Otis Memo") (Doc. 229) at 2. Plaintiff brought a copyright claim against Clyde Otis for the Hippy

Skippy musical composition. Amended Complaint ¶¶ 63–67. In turn, Clyde Otis filed counterclaims against Plaintiff seeking a declaration that it is the sole and exclusive owner of the rights in the Hippy Skippy composition. Counterclaims, Cross-Claim and Answer of Defendant (Doc. 44) at 15 (¶ 32).

Pursuant to Section 505, a district court may in its discretion "award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. "Fee awards, however, are not 'automatic' or given 'as a matter of course.'" *TCA Television Corp. v. McCollum*, No. 15 Civ. 4325 (GBD) (JCF), 2017 WL 2418751, at *9 (S.D.N.Y. June 5, 2017) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)). Awards granted pursuant to Section 505 "should encourage the types of lawsuits that promote" the Copyright Act's aims of "encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirtsaeng v. John Wiley & Sons, Inc.* (Kirtsaeng II), 136 S. Ct. 1979, 1986 (2016). The Supreme Court has suggested a list of non-exclusive factors that courts may consider, commonly referred to as the "*Fogerty* factors;" when determining whether to award attorneys' fees. These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty,* 510 U.S. at 534.

Clyde Otis argues that each of the *Fogerty* factors weighs in favor of an award of attorney's fees. Clyde Otis Memo at 5. Specifically, Clyde Otis claims that it was the "undisputed" victor in this case, Plaintiff's positions after the Court's summary judgment Opinion and Order were frivolous, and Plaintiff has filed numerous baseless copyright actions. *Id.* at 6–7. It also asserts that a grant of attorney's fees would further *Fogerty's* aim to compensate successful copyright litigants. *Id.* at 7.

18

The Court finds that, on balance, given the complexity of the claims, and the significant number of factual disputes remaining after summary judgment, an award of attorneys' fees and costs would not advance the purposes of the Copyright Act. First and importantly, the Court in its summary judgment Opinion and Order, found that there was "no doubt that a cause of action exist[ed] to invalidate [Clyde Otis'] 1969 copyright registration in the Hippy Skippy Composition" because the parties did not dispute that it was an unauthorized derivative work. *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 322 (S.D.N.Y. 2016) (Doc. 159). It was only because ownership of the Happy Man Composition was still at issue at the summary judgment stage, that the Court could not determine to whom the right to recover belonged. The Court also found other significant factual disputes that precluded granting any party's summary judgment motion as to the claims relating to the Hippy Skippy composition. Second, the Court finds that the sanctions it imposed on Plaintiff, *i.e.* dismissal with prejudice and default judgment on Defendants' counterclaims, will sufficiently deter Plaintiff from engaging in baseless or frivolous litigation.

Accordingly, Clyde Otis' motion for attorney's fees is DENIED.

## III. Conclusion

For the reasons set forth above, Codigo's request for a declaration of ownership as to the songs listed in Exhibit A (not including the Happy Man Works) and the Peek A Boo and Slew Music trademarks is DENIED. The parties are directed to submit a proposed Final Judgment and Order reflecting this finding. Zarin's motion to withdraw as counsel is GRANTED. Defendants' motions for sanctions and Clyde Otis' motion for attorneys' fees and costs are DENIED.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 212, 215, 221, 225, 241.

It is SO ORDERED.

Dated: August 11, 2017
New York, New York

Edgardo Ramos, U.S.D.J.